IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

DONIEL CARTER
3819 S. MINER ST. APT. #8
MILWAUKEE, WI 53221
    Plaintiff,

Case No.: 18-cv-727

v.

STATE OF WISCONSIN, DEPARTMENT OF CORRECTIONS,
c/o SECRETARY OF THE DEPARTMENT OF CORRECTIONS
JON LITSCHER
3099 EAST WASHINGTON AVENUE
MADISON, WI 53704

ERIKA GRANSELL
1715 W WISCONSIN AVE.
APPLETON, WI 54914

    Defendants.

---

### COMPLAINT
---

COMES NOW the Plaintiff Doniel Carter, by his attorneys, Davey & Goldman, by Lisa Goldman and Bruce M. Davey, and as and for their complaint allege and show the court as follows:

### NATURE OF THE CLAIM

1. Plaintiff, Doniel Carter, brings this action pursuant to the Civil Rights Act of 1964 (as amended), 42 U.S.C § 1983, the Fourth, Eight, and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of Wisconsin, regarding a continuing course of conduct and/or actions beginning in March 2012 and continuing through Mr. Carter's release from incarceration.

1

2. Mr. Carter brings this action based upon the intentional, sexual touching of plaintiff by Defendant Watson, Defendants demands for Carter to perform degrading acts, and the adverse treatment of Carter, including but not limited to changing the institution in which he was housed, increasing the security restrictions of his housing, and intimidating the plaintiff before, during, and after recorded interviews of Mr. Carter regarding the actions of Defendant Watson.

3. The Defendant DOC as well as the defendant Watson, acting individually, as well as jointly and severally, did cause Carter to be subjected to cruel and unusual punishment causing him emotional, and psychological injuries.

4. Defendant Watson upon information and belief is and was at all times herein a correctional officer within the Department of Corrections, employed by and authorized to act on behalf of the State of Wisconsin.

5. Plaintiff Carter seeks compensatory and punitive damages, declaratory relief, an award of attorney fees and costs, and any such additional relief as the Court deems proper.

**JURISDICTION**

6. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and 1343(a)(3) and (4) as this action seeks redress for the violation of plaintiff's constitutional and civil rights.

7. Plaintiff's claim for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

8. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 367(a), over any and all state constitutional and state law claims that are so

related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

**VENUE**

9. Venue is proper in the United States District Court for the Eastern District of Wisconsin, pursuant to 28 U.S.C. § 1391 (b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

**JURY DEMAND**

10. Plaintiff demands a trial by jury in this action on each and every one of her claims.

**PARTIES**

11. Plaintiff, Doniel Carter, is a citizen of the United States, and was at all times relevant herein a resident of the Department of Corrections, Fox Lake Correctional Institution and Waupun Correctional Institution and Racine Correctional Institution.

12. Defendant, State of Wisconsin, Department of Corrections is an agency of the State of Wisconsin. The Secretary of the Department of Corrections is Jon Litscher and the office of the secretary is located at 3099 East Washington Avenue, Madison, Wisconsin 53704. The Wisconsin Attorney General is the agent of DOC for purposes of service of process pursuant to Wis. Stat. § 801.11(3).

13. Defendant Erika Watson (f/k/a Erika Gransell) is a resident of the state of Wisconsin living at 1715 W. Wisconsin Ave., Appleton, Wisconsin.

14. At all times relevant herein, defendants Watson, and DOC employees violated rights clearly established under the Constitution of the United States, in particular under the Fourth, Eight, and Fourteenth Amendments, of which reasonable

correctional officers and/or supervisors acting under their respective circumstances would have known.

## STATEMENT OF FACTS

15. Plaintiff, Doniel Carter, is a male and at all times material to this action, was an inmate under the supervision of the State of Wisconsin Department of Corrections.

16. Defendant Watson at all times material to this action was a Sergeant correctional officer at Fox Lake Correctional Institution.

17. Upon information and believe Defendant Watson's husband at all times material to this action was a correctional officer at Waupun Correctional Institution.

18. Plaintiff Carter was transferred to Fox Lake Correctional Institution on or about March, 2012.

19. Plaintiff had a custom or habit of being a prison worker and continued to do so upon his transfer to Fox Lake.

20. He volunteered to help set up and clean up from meals in addition to performing other jobs at the prison.

21. He enjoyed all the regular rights and privileges of an inmate at Fox Lake upon his arrival there.

22. Shortly after arriving he became acquainted with Sgt. Watson who supervised his work in the kitchen when she worked third shift.

23. Beginning on or about April of 2012 Sgt. Watson demanded from time to time that plaintiff Carter come with her to the kitchen to clean or perform some other legitimate task necessary for the function of the prison.

24. While in the kitchen performing a necessary task, Sgt. Watson would ask Carter to perform sexual acts, including but not limited to masturbating in front of her, performing cunnilingus on her, and engaging in intercourse.

25. While in the kitchen performing a necessary task, Sgt. Watson would ask Carter to perform demeaning tasks such as licking her toes, taking off his shirt while he worked, and touching himself in ways that made him uncomfortable, such as touching his sexual organs, his anus, and allowing her to touch his body.

26. If Plaintiff Carter tried to refuse to go with Sgt. Watson upon her demand she would threaten him in some fashion such as writing a complaint, requesting he lose privileges, and similar threats.

27. On or about May 17, 2012, other Correctional Officers (Lieutenant Ebert, Sgt. Medema, and Officer Klapper) discovered a letter in Sgt. Watson's backpack that appeared to be for Plaintiff Carter.

28. This letter was immediately investigated, confiscated, and Sgt. Watson was interviewed regarding the same.

29. Sgt. Watson did not reveal who the letter was intended for but resigned shortly after his discovery.

30. The letter stated: "you look so handsome, I like how you look. I leave you for a few days and look at how you change on me. So how am I going to picture you out of here? So you know if you put down a Milw address, the postmark has to say Milw too or it doesn't fly. When you have a "neutral" mail in 2 diff pieces in 1 env it gets caught. They can look on computer and see how each person is related. But only 2 names are on there, one happens to already have my 1st name. So if I mailed it to your

mom and she placed it inside and pushed it forward, it might work. If you were to go to Burke, it would be a little harder, they know me well."

31. Upon further investigation DOC determined that other officers had witnessed Sgt. Watson spending significant time at Plaintiff Carter's cell, that Plaintiff Carter only had two authorized family / friends listed as potential visitors, one of whom was the mother of his child, Erika, and his mother.

32. DOC immediately placed Plaintiff in Temporary Lock Up status and then transferred him to Waupun Correctional Institution.

33. Upon his transfer he was placed in solitary confinement and stripped of all privileges. He could not receive or send mail, he could not have recreation time, he could not see other inmates, he could not work, he could not watch t.v.

34. Plaintiff Carter remained in this status for approximately one month.

35. After a month Plaintiff Carter obtained some of his rights back and was eventually transferred to Racine Correctional Institution where he remained with all rights and privileges until his release.

36. During his time in lock up and Waupun he missed a court hearing at which a judge was going to reduce his sentence for assistance he provided to federal prosecutors in another matter.

37. Upon information and belief the prosecutors involved in that matter recommended Carter's sentence be deemed served.

38. When Carter missed the hearing because of his locked up status it was rescheduled for several weeks later and at that time the court reduced his sentence such that he would remain incarcerated for another year.

39. During his time in lock up status and in solitary confinement he was repeatedly subjected to interrogations regarding the letter found in Sgt. Watson's backpack.

40. Before, during, and after the interrogations he was warned as to how to answer the interrogation questions such that he did not reveal the treatment he endured from Sgt. Watson.

41. When he was not interrogated in the investigation officers at Waupun, the same institution at which Sgt. Watson's husband worked as an officer, would threaten him in the event he had engaged in sexual contact with Sgt. Watson.

42. To the extent that touching alleged above was sexually motivated, it was not for a legitimate purpose and Plaintiff Carter did not consent to being touched sexually.

43. Plaintiff Carter did not consent to perform degrading acts and those acts were not for legitimate penal purposes.

44. Once Plaintiff Carter was released from prison, Sgt. Watson pursued him through various means of contact including but not limited to email, messenger, phone, and having her daughter text Carter.

45. On one occasion Sgt. Watson revealed to Carter a picture of herself which clearly depicts a tattoo she obtained which spelled Plaintiff Carter's first name, Doniel, a tattoo which should have been visible by her co-workers at Fox Lake Correctional Institution.

46. At no time during his incarceration or upon his release did plaintiff consent to inappropriate or sexual contact with Sgt. Watson.

## CAUSES OF ACTION

47. Plaintiff Carter realleges the allegations in paragraphs 1 through 46 above.

48. Defendant Watson in her individual capacity, acting under color of state law, violated Plaintiff Carter's due process rights, protected by the Fourteenth Amendment, which include the right to bodily integrity. *U.S. v. Lanier*, 520 U.S. 259 (1997).

49. Defendant Watson in her individual capacity, acting under color of state law, violated Plaintiff Carter's Fourteenth Amendment equal protection rights in demanding that he perform degrading tasks or other tasks with threat of punishment if he refused to do so.

50. Defendants Watson in her individual capacity, and DOC under color of state law, violated Plaintiff Carter's Eight Amendment rights to be free of cruel and unusual punishment.

51. DOC failed to protect Carter from Sgt. Watson's entirely predictable conduct in violation of the Eight Amendment to the U.S. Constitution.

52. As a separate state law claim Sgt. Watson sexually assaulted Carter.

53. As a separate state law claim DOC was negligent in the hiring, training, and supervision of Sgt. Watson.

54. As a separate state law claim DOC is vicariously liable for the conduct of Sgt. Watson under the doctrine of respondeat superior.

55. Defendants actions caused plaintiff Carter pain and suffering, mental anguish, and emotional distress.

WHEREFORE, Plaintiff requests that he be granted judgment against Defendants and he be awarded damages in an amount found reasonable by a jury for his emotional distress and mental anguish, and costs, expenses, and reasonable attorney fees.

Dated: May 9, 2018

        DAVEY & GOLDMAN
        Attorneys for Plaintiff
        Doniel Carter

        /s/ Lisa C. Goldman
        Lisa C. Goldman, SBN: 1029893
        5609 Medical Circle, Ste. 101
        Madison, WI 53719
        Phone: (608) 630-9700
        Fax: (608) 205-5645

        lgoldman@daveygoldman.com