UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DONIEL CARTER,
        Plaintiff,

v.                                                Case No. 18-cv-0727-bhl

ERIKA WATSON, et al.,
        Defendants.

---

## DECISION AND ORDER

---

       In this lawsuit, plaintiff Doniel Carter claims defendants violated his Eighth Amendment rights in connection with defendant Erika Watson's inappropriate and coercive sexual relationship with Carter. (ECF Nos. 1, 4, 22.) Carter voluntarily dismissed the claims against defendant Jon Litscher. (ECF No. 22.) The Court then dismissed defendants Jason Medema and Michelle Klapper from the case on December 4, 2019. (ECF No. 43 and 4-5.) Discovery closed June 12, 2020, and dispositive motions were due July 17, 2020. (ECF No. 52.) Defendant Tara Weideman filed a motion for summary judgment on July 17, 2020. (ECF No. 45.) Defendant Watson did not file a motion for summary judgment. This order resolves Weideman's motion for summary judgment.

## FACTUAL BACKGROUND

      Carter is a former Wisconsin Department of Corrections (DOC) inmate who was incarcerated at Fox Lake Correctional Institution until May 2012. (ECF No. 58, ¶3.) Weideman and Watson were correctional officers at Fox Lake at the relevant time. (*Id*., ¶5.) Watson was Weideman's supervisor, but they were also friends outside of work.[1] (*Id*., ¶¶5, 9, 16-19.)

---

[1] Weideman and Watson met when they worked together at Fox Lake. (ECF No. 58, ¶2.) They are friends on Facebook and interact with each other outside of work. (*Id*., ¶¶16-19.) In May 2012, before Watson was "walked out" of the institution, they went camping together at Devil's Lake. (*Id*.) They stayed in the same tent, drank alcohol, and talked about "personal stuff." (*Id*., ¶¶17-18.) When they returned to work, they showed Carter pictures of the trip. (*Id*., ¶9.)

At some point before May 17, 2012, Watson initiated sexual encounters with Carter while he was an inmate at Fox Lake. (Carter Dec., ECF No. 55, ¶¶15-16.) Watson told Carter where and when to meet her, *i.e.*, in the social worker's room or janitor's closet, and she told him what she wanted him to do, including engaging in sexual activity. (*Id.*, ¶15.) When Carter told Watson that he didn't want to do what she asked, Watson threatened to "take away his privileges" and to interfere with his "sentence modification motion." (*Id.*, ¶16.)

The issue on summary judgment is Weideman's knowledge of and involvement in the coercive sexual encounters. (*See* ECF Nos. 53 and 58.) According to Carter, Weideman knew exactly what was going on and helped facilitate the coercive encounters. (*See* ECF No. 58.) Carter says that he had "frequent conversations" with Watson on the nights that she worked in his unit and Weideman was often present in the sergeant's area or day room while this occurred. (*Id.*, ¶¶6-7.) He says that Weideman helped facilitate the sexual encounters by telling Carter that Watson "needed him to do something" in the social worker's room or janitor's closet, and when he got to the location, Watson was waiting for him to demand sexual acts. (*Id.*, ¶12.) Weideman would also tell Carter when Watson was next scheduled to work, and she would tell him to "hold on" until then. (*Id.*, ¶ 13.) Weideman also allegedly helped pass notes between Carter and Watson. (*Id.*, ¶¶10-11.) Weideman gave Carter a Sports Illustrated magazine on two different occasions and said, "here these are from sergeant [Watson]." (*Id.*, ¶10.) The magazine contained notes that described "how much Watson liked or loved him" and included a nude picture of Watson. (*Id.*, ¶¶10-11.) On one occasion, the Sports Illustrated magazine had a number written in the upper right-hand corner of one of the pages. (*Id.*, ¶15.) When Carter called the number, Watson answered. (*Id.*) Weideman also told Carter that she "knew that Watson liked him and that he should not snitch on Watson or on her either." (*Id.*, ¶14.)

Weideman denies these allegations. (*See* ECF No. 53.) According to Weideman, she didn't know that Watson was spending alone time with Carter or that she was passing notes to him. (*Id.*, ¶16.) Weideman only saw Watson talking to Carter one time and everything appeared "normal." (*Id.*, ¶8.) Weideman insists she only talked to Carter one time while she worked at the institution and it was about a rule infraction, not about Watson. (*Id.*, ¶9.) Weideman states that she never helped Watson communicate with Carter. (*Id.*, ¶17.) She neither acted as a lookout,

2

passed notes, nor ordered him to go to particular locations for the purpose of placing him alone with Watson for sexual encounters. (*Id*.)

On May 17, 2012, Watson was "walked out" of the institution after supervisors found a letter in her backpack addressed to Carter. (ECF No. 58, ¶23.) Watson then called Weideman, and Weideman told her to resign. (*Id*., ¶¶20-23.) Weideman states that she was not working at the institution on the day Watson called her nor was she contacted by the DOC during the investigation into Watson's behavior. (ECF No. 53, ¶¶11, 20.) Weideman claims that she didn't report her conversation with Watson because Watson was already under investigation by that time. (*Id*., ¶ 19.) Watson resigned shortly thereafter, and Carter was transferred to the Waupun Correctional Institution, where he was placed in solitary confinement for four weeks. (*Id*; *see also* Carter Dec., ECF No. 55, ¶3.)

Later, the DOC transferred Carter to the Racine Correctional Institution. (ECF No. 58, ¶27.) While at Racine, Carter received a letter from Watson telling him to call a phone number. (*Id*.) When he called, Weideman answered. (*Id*.) Watson was there, allegedly, but Carter did not talk to her. (*Id*.) Weideman told Carter that she wanted him to "keep his mouth shut." (*Id*.) She also asked if he had said anything while he was in solitary confinement at Waupun. (*Id*.)

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party asserting that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

3

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Court must view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

## LEGAL ANALYSIS

To establish an Eighth Amendment violation, Carter must prove that Weideman acted with deliberate indifference toward an excessive risk to his health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 837, (1994); *see also J.K.J. v. Polk Cty.*, 960 F.3d 367, 376 (7th Cir. 2020). Carter must provide evidence from which a reasonable jury could conclude that: (1) he faced an objectively serious risk of harm and (2) Weideman subjectively knew about the risk of harm and disregarded it. *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018).

Weideman claims she is entitled to summary judgment because Carter has "no evidence" showing that she knew Watson forced him in to participate in sexual encounters. (ECF No. 46 at 8.) To support this assertion, she cites to her own deposition testimony in which she denied having any knowledge of the coercive sexual relationship between Watson and Carter. (*Id.* at 9-10.)

But Watson's testimony is not the only evidence in the record. Carter submitted his own declaration, *see* ECF No. 55, detailing his conversations and interactions with Weideman, suggesting that she knew about Watson's sexual encounters with Carter. *See Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (holding that a non-moving party's own affidavit can constitute affirmative evidence to defeat summary judgment motion). According to Carter's declaration, Weideman told him to go to specific locations because Watson "needed him to do

4

something," and when he went to that location, Watson was waiting for him to demand sexual acts. Weideman told Carter that she knew Watson liked him, that he shouldn't "snitch" on Watson or on her, and to "hold on" until the next time Watson was working. Weideman also allegedly gave him magazines that contained notes and nude pictures and said that the items were from Watson. Based on these allegations from Carter's declaration, a reasonable jury could infer that Weideman was aware that Watson and Carter were engaging in sexual encounters and that she took acts to help facilitate the encounters. Weideman of course denies these allegations but that is a credibility determination for the jury. *See McCann v. Iroquois Memorial Hosp.,* 622 F.3d 745, 752 (7th Cir. 2010) (concluding that "summary judgment cannot be used to resolve swearing contests between litigants").

Weideman argues that, to the extent she directed Carter to go to certain locations or gave him magazines, she didn't know that Watson was forcing him to participate in sexual acts or that the magazines contained secret notes and nude pictures. (*See* ECF No. 57.) While a reasonable jury may accept Weideman's testimony professing her ignorance, concluding she simply did what her supervisor told her to do and didn't ask any questions, it could also reasonably infer that Weideman knew exactly what was happening because they were close personal friends. At summary judgment, the Court must take all facts in light most favorable to the non-moving party and it must also draw all reasonable *inferences* from those facts in favor of the non-moving party. Taking all facts and reasonable inferences in favor of Carter, a jury could conclude that Weideman knew about the sexual encounters and took acts to help facilitate them.

Weideman briefly mentions that Carter was required to produce the Sports Illustrated magazines, the love notes, and the nude picture of Watson as corroborating evidence to prevent summary judgment, *see* ECF No. 57 at 2-3, but the Seventh Circuit has long rejected that proposition. *See Berry v. Chicago Transit Auth.,* 618 F.3d 688, 691 (7th Cir. 2010) ("It is worth pointing out here that we long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is 'self-serving.' If based on personal knowledge or firsthand experience, such testimony can be evidence of disputed material facts."); *see also Smith v. Schaefer*, 525 Fed. Appx. 440 (7th Cir. 2013). Carter's declaration is based on firsthand experience, *i.e.* his conversations and interactions with Weideman. If there are disputes of fact on whether certain conversations and

5

interactions that he said occurred with her actually occurred, it is for the jury to decide those, not the Court on summary judgment.[2]

Finally, Wiedemann is not entitled to qualified immunity. Qualified immunity protects government officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019) (internal citations omitted). The Court evaluates: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated the plaintiff's constitutional rights and (2) whether that constitutional right was "clearly established" at the time of the alleged violation. *Id*. The latter inquiry is often dispositive and may be addressed first. *Id*.

For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). The unlawfulness of a particular official's action must be apparent "in light of the pre-existing law." *Id.* A party may demonstrate that a right was clearly established by presenting a closely analogous case establishing the defendant's conduct was unconstitutional or by presenting evidence the defendant's conduct was so patently violative of the constitutional right that reasonable officials would know without guidance from a court. *See Hope*, 536 U.S. at 739-40.

Weideman asserts that Carter has not presented a closely analogous case establishing that her conduct was unconstitutional. However, her alleged conduct in this case is so patently inappropriate that any reasonable correctional officer would have known that it violates the constitution even absent guidance from a court. Any reasonable correctional officer would know that helping another correctional officer arrange sexual encounters with a prisoner is punishment substantially more onerous than what was contemplated for his criminal conviction. Under no circumstances is it acceptable under the constitution to arrange sexual encounters between an

---

[2] The Court notes that evidence at summary judgment must be admissible at trial, but it need not be in admissible form at summary judgment. *See Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016). To the extent there are issues with Carter's current statements regarding the Sports Illustrated magazines, they can be changed into admissible form for trial.

6

inmate and a correctional officer as punishment for any crime. Weideman is not entitled to qualified immunity.

Wiedemann characterizes this lawsuit as nothing more than a failure to report a violation of the prison fraternization policy, but Carter has produced enough evidence from which a reasonable jury could conclude that she knew about coerced sexual encounters and actively participated in facilitating them. The Court will deny Weideman's motion for summary judgment.

## CONCLUSION

**IT IS ORDERED** that defendant Tara Weideman's motion for summary judgment (ECF No. 45) is **DENIED**. The Court will schedule a telephonic status conference to discuss next steps.

Dated at Milwaukee, Wisconsin this 18th day of November, 2020.

s/ Brett H. Ludwig<br>
Brett H. Ludwig<br>
United States District Judge