DONIEL CARTER

       Plaintiff,

                                Case No.:  18-cv-727

       v.

STATE OF WISCONSIN, DEPARTMENT OF CORRECTIONS,
c/o SECRETARY OF THE DEPARTMENT OF CORRECTIONS
JON LITSCHER

ERIKA WATSON (F/K/A ERIKA GRANSELL)

       Defendants.

---

### PLAINTIFF'S RESPONSE TO DEFENDANT TARA WEIDEMAN'S MOTIONS IN LIMINE (1 THROUGH 5)

---

COMES NOW the Plaintiff Doniel Carter, by his attorneys, Davey & Goldman, by Lisa C. Goldman and by Cade Law Group LLC, by Nathaniel Cade, and responds to defendant Tara Weideman's motions in limine 1 through 5 as follows:

**Weideman's Motion in Limine No. 1 – requesting the court allow Weideman to present evidence and argue as a defense to the jury that Carter consented to a relationship with Watson and therefore Weideman did not fail to intervene if the relationship was consensual.**

This court should deny Weideman's motion in limine number 1.  Wis. Stat. § 940.225(2)(h)[1] makes it a crime for a guard to have sexual contact with an

---

[1] **(h)** Has sexual contact or sexual intercourse with an individual who is confined in a correctional institution if the actor is a correctional staff member. This paragraph does not apply if the individual with whom the actor has sexual contact or sexual intercourse is subject to prosecution for the sexual contact or sexual intercourse under this section.

1

inmate. Wis. Stat. § 940.225(4) definition of consent reiterates that an inmate cannot consent to sexual contact with a guard with an inmate is not competent to do so. Specifically, Wis. Stat. § 940.225(4) states:

> (4) Consent. "Consent", as used in this section, means words or overt actions by a person who is competent to give informed consent indicating a freely given agreement to have sexual intercourse or sexual contact. **Consent is not an issue in alleged violations of sub. (2)** (c), (cm), (d), (g**), (h),** and (i). The following persons are presumed incapable of consent but the presumption may be rebutted by competent evidence, subject to the provisions of s. 972.11 (2):
> (b) A person suffering from a mental illness or defect which impairs capacity to appraise personal conduct.
> (c) A person who is unconscious or for any other reason is physically unable to communicate unwillingness to an act. (emphasis added)

This provision reiterates that it is a rebuttable presumption for certain individuals who cannot consent such as a person suffering from a mental illness or defect (sec. (4)(b)), or a person who is unconscious for any other reason (sec. (4)(c)). **But, there is no rebuttable presumption for an inmate in a penal institution.** An inmate in a penal institution cannot consent to sexual contact. The only defense a guard can have to sexual contact between a guard and an inmate is an accusation that inmate raped the guard. We do not have that situation in this case. Defendant Watson asserts she maintained a consensual sexual relationship with Carter after she resigned from her position with DOC. She maintains she never had sexual contact with Carter while she worked at Fox Lake. Defendant Weideman, on the other hand, asserts she was not aware of the nature of the relationship between Carter and Watson until after Watson resigned.

This court should deny defendant Weideman's motion in limine because consent is not a defense to his Eighth Amendment claim. In support of her motion in limine, Weideman cites to an 8th Circuit case from 1997, *Freitas v. Ault*, 109 F.3d 1335, 1339 (8th Cir. 1997), and a 10th Circuit case, *Graham v. Sheriff of Logan Cty*, 741 F.3d 1118, 1126 (10th Cir. 2013), and *J.K.J. v. Polk Cty*, 960 F.3d 367 (7th Cir. 2020). The Seventh Circuit has never adopted the position of the 8th Circuit or the 10th Circuit in this regard. And importantly, Defendant Weideman misreads *J.K.J. v. Polk Cty*.

In *J.K.J. v. Polk Cty.*, the defendants appealed a trial verdict in favor of the female inmates arguing that Judge Conley gave faulty jury instructions because the court did not include an instruction on an affirmative defense of consent. The Seventh Circuit rejected defendants' arguments. Specifically, the Seventh Circuit stated,

> Our review of the trial transcript shows that the district court completely and accurately instructed the jury on the elements of the Eighth Amendment claim. No further explanation was necessary to tell the jury how to consider the consent issue. If the jury had bought Christensen's story that J.K.J. and M.J.J. were willing participants (and, for that matter, *even capable of being willing participants* under the circumstances), it would have found that the women had not met their evidentiary burdens of proving that he acted with deliberate indifference to their safety and well-being. But the jury reached no such conclusion. The instructions were sufficient.

*J.K.J. v. Polk Cty.*, 960 F.3d 367, 376 (7th Cir. 2020)(emphasis added).

The jury instructions Judge Conley gave on plaintiffs' eighth amendment claims in *J.K.J. v. Polk Cty.* were,

B. Special Verdict
1. Claim against Defendant Christensen

3

> To succeed on plaintiff's Eighth and Fourteenth Amendment Claim against defendant Christensen, plaintiff must prove each of the following things by a preponderance of the evidence:
> 1) plaintiff was incarcerated under conditions that posed a substantial risk of serious harm to her health or safety; and
> 2) defendant was deliberately indifferent to plaintiff's health or safety.
> With respect to the claim against defendant Christensen the term "deliberately indifferent" means that he actually knew of a substantial risk of harm and that he consciously disregarded this risk through his actions.

*See* Declaration of Lisa Goldman, dated October 12, 2021, at Ex. A.

Importantly, no instructions were given with regard to consent as a defense. The Seventh Circuit determined that the instructions given were sufficient, meaning the court rejected defendants' argument that consent is a defense to an Eighth Amendment claim for sexual contact between a guard and an inmate, and that a jury instruction on such an affirmative defense or rebuttable presumption was appropriate. Moreover, the Seventh Circuit Court in *J.K.J. v. Polk Cty.* never considered Wis. Stat. § 940.225 when considering the issue of consent in that an inmate is incompetent for purposes of consent.

If Carter is incompetent with regard to consent to a sexual relationship with Watson while incarcerated then Weideman has no right to demand this court allow her to argue that Carter consented to sexual contact with Watson and therefore he suffered no injury and therefore Weideman had no obligation to intervene. As Weideman as conceded, "[t]he Seventh Circuit has recognized that where an officer has a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's right but fails to do so, [s]he may be held liable." (Dkt. 76, p. 2) Weideman had an opportunity and a responsibility to report Watson's sexual

4

conduct with Carter to prevent her from violating Carter's right.  But, she failed to do so.

**Weideman's Motion in Limine No. 2 – To exclude testimony or other secondary evidence about the Sports Illustrated magazines, notes, and pictures because Carter failed to preserve these items of evidence.**

Weideman asks this court to exclude evidence that Weideman gave Carter Sports Illustrated magazines, notes, and pictures because he did not retain the original magazines, notes, or pictures.  She argues that under the best evidence rule Carter had an obligation to retain the original evidence.  What Weideman is really asserting is a spoliation claim.  She is claiming Carter lost or destroyed the original magazines, notes, and pictures and should be barred from introducing testimony about them.  This argument must fail.  Spoliation only applies when the items destroyed or lost are done so after it is apparent they would be useful in a pending litigation matter to opposing counsel.  When Carter flushed Watson's notes he had no idea litigation might ensue.  And, flushing the notes is actually more harmful to him than to Weideman because he now does not have the notes as proof for this litigation.  Spoliation typically means the opposing party seeking sanctions is harmed by the spoliation of evidence.  Weideman is not harmed by the lack of this evidence.

In her motion Weideman concedes that Carter returned the pictures to Weideman, flushed the notes down the toilet, and did not have control over the magazines.  (Dkt. 76, p. 4)  It is uncontested that after Watson was escorted out of Fox Lake, Carter was placed in segregation in Waupun.  All of his belongings were taken away from him and he was not given them back until he was released from segregation.  When his items were returned to him, he was not supplied the Sports

Illustrated Magazines. The prison, defendant Weideman's employer, kept those items. Carter did not have the ability to retain the magazines and returned the photos to defendant Weideman. Surely, Weideman cannot argue that she should benefit in this trial because she controlled evidence Carter cannot now produce such as the pictures and magazines. Moreover, there is at least one letter from Watson to Carter that was preserved during the investigation – the letter Watson was writing to Carter, found in her backpack, that she asserted she was writing to a family member.

For these reasons Weideman's motion in limine number 2 should be denied.

**Weideman's Motion in Limine No. 3 – to exclude any testimony, evidence, argument or questions regarding the details of other legal cases in which Weideman has been involved that are unrelated to her interactions with Carter, and details of other inmate grievances and her work file history.**

Carter asks this court to deny Weideman's motion in limine number 3. Weideman asks for this ruling on the basis of Rule 401, relevancy, and under a probative value prejudice analysis, Rule 403. Evidence of Weideman's prior violations of the fraternization policy, prior disciplinary actions, and work file history is admissible evidence under Rule 404(b), motive, plan, preparation, lack of mistake.

Weideman understood the fraternization policy. She was disciplined under it previously and removed from her assignment at the prison Chapel because she became too close to an inmate. She knew that if she was tangled up on another fraternization offense she likely would have been terminated. She helped her friend Watson engaged in sexual contact with Carter and then kept silent about the contact because she did not want to lose her job and did not want her friend to be

6

prosecuted criminally. She was the first person Watson spoke with after she was terminated. In fact, Watson called Weideman before 4:00 a.m. to tell her she was escorted out of the institution and Weideman suggested Watson resign. Weideman did not want an investigation because she knew she would be implicated if the investigation continued and knew Watson could be prosecuted criminally. *State v. Sullivan,* 216 Wis. 2d 678, 785, 576 N.W.2d 30, 38 discusses other acts evidence and cites to Wigmore on Evidence for an explanation of other acts evidence to show intent or absence of mistake.

> A hunter is charged with having shot a companion, and the hunter claims that the shooting was accidental. Under these circumstances evidence of the hunter's having fired at the companion on other occasions becomes admissible to disprove the claim of accidental shooting.

216 Wis. 2d 678, 785, 576 N.W.2d 30, 38 (*citing* 2 Wigmore, *Evidence* § 302, at 241 (Chadbourn rev. 1979). The hunter's prior shots at the companion is admissible evidence to show that the hunter's current defense of "accidental shooting" is unlikely given his prior conduct.

Here, Watson is alleging sexual conduct after resignation and Weideman is alleging a lack of knowledge until after Watson resigned. Presumably, both will assert that Weideman's handing of magazines to Carter was an innocent act done to assist her co-worker without knowledge that there were pictures of Watson within the magazine or that the magazines were part of Watson's inappropriate, sexual, and harmful control of Carter, that they did not orchestrate them, and that it was a simple mistake because she believed she was being helpful to Watson. Watson is likely to assert that Watson was her seargent and that if she asked her to tell Carter to meet Watson in the kitchen or the social worker room that she

7

followed that order and assumed it served a legitimate purpose. "If a like occurrence takes place enough times, it can no longer be attributed to mere coincidence. Innocent intent will become improbable." Sullivan, at 787 *citing* State v. Evers, 139 Wis. 2d 424, 443, 407 N.W.2d 256 (1987).

Carter maintains that Watson and Weideman had an intent, a plan, a motive, to assist Watson in engaging in sexual conduct with Carter in part because she was upset her husband, a coworker at Fox Lake, Timothy Gransell, was having an affair with another guard. Proof of Weideman's prior disciplinary records for this exact conduct disprove her assertion that she was duped, that these were innocent mistakes, that she did not realize Watson was violating the fraternization policy, that she thought she was just being helpful to Watson, or was only following her Sgt. orders.

While some of this evidence might be prejudicial to Weideman or Watson or both, it is not unduly or unfairly prejudicial and would not take up much time at trial to present this evidence.

**Weideman's Motion in Limine No. 4 – to exclude any testimony, evidence, argument or questions regarding the details of lawsuits relating to the Department of Corrections (DOC), or any other DOC employees.**

This court should deny Weideman's motion in limine number 4, in part. Here, Defendant seeks to bar introduction of evidence regarding other lawsuits against DOC. Standing alone, that is a fair request and the motion should be granted.

However, Carter should not be precluded from asking DOC witnesses about methods of investigations, what steps that should be taken to investigate, etc. If the

witnesses deny certain investigation methods, steps taken to investigate claims regarding fraternization or sexual relations, etc., Carter should then be allowed to identify similar or other cases that DOC did investigate, methods used, etc. (i.e. the technique or proper steps) as opposed to the underlying case (i.e. the allegations and the actual outcome/result of the investigation).

Moreover, Carter also should not be precluding from asking general questions of witnesses as to general issues as to DOC investigations (rather than specifics of actual lawsuits), as there is an issue as to whether DOC properly investigated Carter's claims. The questions posed will not address specific cases (unless the witnesses lie about prior investigations and proper techniques, etc.).

**Weideman's Motion in Limine No. 5 – to allow Defendant's counsel to ask Carter and any of his witnesses about their prior criminal convictions during cross-examination.**

Reading Defendant's motion in limine number 4 and then number 5, it is understandable if the Court is suffering from a case of whiplash. On the one hand, the Defense says it is not ok to ask questions about other cases, as they are not relevant and prejudicial, then, on the other hand, claim that it is not prejudicial but relevant to ask Plaintiff and any witnesses about other convictions. Either other matters are relevant and not prejudicial, or they are not relevant and prejudicial. Defendant cannot have it both ways.

As noted in Carter's motions in limine numbers 1 and 2, indications of Plaintiff's felony convictions arguably are admissible under Rule 609(a)(1)(A), the Court should limit information about the prior convictions to reduce the risk of prejudice to Plaintiff given the nature of his convictions. *See Schmude v. Tricam Indus., Inc.*, 556 F.3d 624, 627 (7th Cir. 2009).

9

The impeachment of Plaintiff should be limited to the fact that Plaintiff is a convicted felon. Anything else does not get to the probative value of the case, but instead solely prejudices Carter.

Instead, the Court should provide a limiting instruction to the jury explaining the proper use of prior convictions for impeachment at trial. *See* Seventh Circuit Pattern Civil Jury Instructions 1.15 ("You have heard evidence that [Name] has been convicted of a crime. You may consider this evidence only in deciding whether [Name's] testimony is truthful in whole, in part, or not at all. You may not consider this evidence for any other purpose.").

As to the other witnesses that Carter may call, Plaintiff believes that the matter should be decided on a case-by-case basis *as to each witness called*, rather than a blanket order. If the produced witness has a criminal conviction that specifically deals with dishonest or false act. Rule 609(a)(2). Otherwise, if there is not an element of a dishonest or false act, the Court should limit the defense from noting that the individual is a convicted felon (or currently incarcerated). The proposed jury instruction from the Seventh Circuit, 1.15, deals with this situation.

Dated:  October 12, 2021

**DAVEY & GOLDMAN**

Lisa C. Goldman
State Bar No. 1029893
Bruce M. Davey
State Bar No. 1012256
5609 Medical Circle, Suite 101
Madison, WI 53719
Phone:  608-630-9700
Fax:  608-205-5645

**CADE LAW GROUP LLC**

By: s/ NATHANIEL CADE, JR.
    Nathaniel Cade, Jr. SBN:1028115
    P.O. Box 170887
    Milwaukee, WI 53217
    (414) 255-3802 (phone)
    nate@cade-law.com

    Attorneys for Plaintiff,
    Doniel Carter

11

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

DONIEL CARTER

       Plaintiff,

                                Case No.:  18-cv-727

       v.

STATE OF WISCONSIN, DEPARTMENT OF CORRECTIONS,
c/o SECRETARY OF THE DEPARTMENT OF CORRECTIONS
JON LITSCHER

ERIKA WATSON (F/K/A ERIKA GRANSELL)

       Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that on Tuesday, October 12, 2021, I electronically filed the above document in this matter, PDF Formatted, with the Clerk of Court for the Eastern District of Wisconsin using the CME/ECF system.  All of the Defendants are represented by attorneys who are registered user of the United States District Court Eastern District of Wisconsin CME/ECF system.

       Dated: October 12, 2021

                                       **CADE LAW GROUP LLC**

                                       By: s/ NATHANIEL CADE, JR.
                                     Nathaniel Cade, Jr. SBN:1028115
                                     P.O. Box 170887
                                     Milwaukee, WI 53217
                                     (414) 255-3802 (phone)
                                     nate@cade-law.com

                                     Attorneys for Plaintiff,
                                     Doniel Carter