IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

DONIEL CARTER

    Plaintiff,

v.

                                                        Case No.: 18-cv-727

STATE OF WISCONSIN, DEPARTMENT OF CORRECTIONS,
c/o SECRETARY OF THE DEPARTMENT OF CORRECTIONS
JON LITSCHER

and

ERIKA WATSON (F/K/A ERIKA GRANSELL)

    Defendants.

## DECLARATION OF DONIEL CARTER

    I, Doniel Carter, pursuant to 28 U.S.C. §1746, declare as follows:

1. I am the plaintiff in this action.

2. I make this declaration based on my own personal knowledge.

3. I was incarcerated at Fox Lake Correctional Institution in 2012 until sometime in May 2012 when I was transferred to Waupun Correctional Institution and placed in solitary confinement for four weeks in maximum security.

4. During the time I was incarcerated at Fox Lake, I was in housing unit 10 which was a medium security unit.

5. I had frequent conversations with Erica Watson the nights she worked in unit 10.

6. The nights that Watson worked in housing unit 10, Tara Weideman always would come to unit 10 and conversed with Watson in the sergeant's area or day room.

**EXHIBIT 2007 - 001**

Sometimes Weideman was there for a couple hours. Sometimes Weideman would come to unit 10 more than once in an evening to talk to Watson. The entire time I was at Fox Lake in unit 10, both Weideman and Watson worked at Fox Lake.

7. I know that Tara Weideman observed Watson and I talking in unit 10 on several occasions.

8. Watson and Weideman told me they were friends and Watson showed me pictures of her and Weidemen on a camping trip. Weideman was there while Watson showed me the pictures.

9. On two occasions Weideman gave me a Sports Illustrated magazine that contained a note from Watson on a piece of paper. One of the magazines also contained a picture of Watson's naked breasts. Weideman said here these are from sergeant Gransell (Watson) when she gave me the magazines.

10. The notes said how much Watson liked or loved me and what time she would take me to the social worker room, kitchen, or utility room.

11. On other occasions Weideman told me the sergeant (Watson) needed me to do something in the social worker room or the janitor's closet. I went there and met Watson there and engaged in the oral sexual acts Watson wanted.

12. Weideman also talked to me on some occasions when Watson was not working and told me when Watson was next scheduled to work on unit 10 and told me to hold on.

13. On one occasion, Weideman told me she knew Watson liked me and that I should not snitch on Watson or on her either.

14. One of the Sport's Illustrated I was given by Weideman while I was at Fox Lake had a number written in the upper right hand corner of the first several pages that I was to call. When I called the number, Watson answered.

15. Watson on various occasions told me what time and where to meet her and what she wanted me to do including sucking her breasts and toes and having oral sex with me.

16. When I said I did not want to do what she wanted, Watson told me if I refused she would take away my privileges and would fuck up my sentence modification motion.

17. After I was transferred to the Racine Correctional Institution, I received a letter from Erica Watson telling me to call a phone number when I got the letter. I called the number and Weideman answered the phone. Watson was there, but I did not talk to Watson. Weideman told me Watson wanted me to keep my mouth shut and asked if I had said anything while I was in solitary confinement.

PURSUANT TO 28 U.S.C § 1746, I VERIFY UNDER PENALTY OF PERJURY THAT THE STATEMENTS IN THIS DECLARATION ARE TRUE AND CORRECT AND BASED UPON MY PERSONAL KNOWLEDGE.

Dated: August 17, 2020

/s/ Doniel Carter
Doniel Carter

3

Case 2:18-cv-00727-PP-WED   Filed 08/17/20   Page 3 of 3   Document 55
Case 2:18-cv-00727-BHL   Filed 10/12/21   Page 3 of 3   Document 89-13

EXHIBIT 2007 - 003