UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DONIEL CARTER,

    Plaintiff,

  v.            Case No. 18-cv-727-bhl

ERIKA WATSON, et al.,

    Defendants.

## ORDER RESOLVING POST-TRIAL MOTIONS

  More than four years ago, on May 9, 2018, Plaintiff Doniel Carter filed this lawsuit alleging that Defendants Erika Watson, the State of Wisconsin, and several others, violated his Eighth Amendment rights in connection with unwanted sexual encounters Watson coerced him into at the Fox Lake Correctional Institution during a three-month period between March and May 2012. Dkt. No. 1. Through subsequent amended complaints and litigation, Carter's claims against all defendants other than Watson and her former co-worker, Tara Weidemann, were dismissed. Dkt. Nos. 4, 12, 22, & 43. In November 2021, the Court presided over a four-day jury trial on the claims against Watson and Weidemann. Dkt. No. 100 & 101. After several hours of deliberations, the jury returned a split verdict. Dkt. No. 104. It found that Watson had violated Carter's Eighth Amendment rights, but Weidemann had not. *Id*. The jury also found that Carter was not entitled to any compensatory damages, but the jurors nevertheless awarded him $125,000 in punitive damages based on Watson's misconduct. *Id*.

  This matter comes before the Court on several post-trial motions: (1) Watson's "Motion for Judgment NOV, Relief from Judgment or for Remittitur;" (2) Carter's Motion for Attorney's

Fees; and (3) the State of Wisconsin's Motions to Intervene and for Declaratory Judgment. Dkt. Nos. 107, 117, 120, & 124. The Court will address the motions below.

## I.  Watson Is Not Entitled to Relief on Her "Motion for Judgment NOV, Relief from Judgment or for Remittitur."

Invoking Federal Rules of Civil Procedure 59(e) and 60(b), Watson's post-trial motion asks the Court to "vacate the final judgment or significantly reduce Plaintiff's award of punitive damages." Dkt. No. 124 at 1. In the title of the same filing, Watson also asks for "Judgment Notwithstanding the Verdict," although she does not cite Rule 50(b), the rule governing such relief. *See id*. She also seeks an order for "Remittitur" that eliminates or reduces the punitive damages award. *Id*. at 5-10. Because Watson has not established that she is entitled to any of the relief she requests, her motion will be denied in its entirety.

### A. Watson Is Procedurally Barred from Seeking Judgment Notwithstanding the Verdict (JNOV).

Watson's request for judgment notwithstanding the verdict fails; in fact it does not even make it out of the starting gate. Rule 50 outlines the procedure for a JNOV motion. *See e.g. Haze v. Kubicek*, 880 F.3d 946, 950 (7th Cir. 2018). Under Rule 50(a), "[a] motion for judgment as a matter of law may be made at any time *before* the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2) (emphasis added). The motion must "specify the judgment sought and the law and facts that entitle the movant to the judgment." *Id*. Rule 50(b) allows for the "renew[al]" of a Rule 50(a) motion *after* trial. *See* Fed. R. Civ. P. 50(b). Putting both parts of the rule together, a party cannot obtain relief *after* trial under Rule 50(b) unless that party timely sought relief *during* trial under Rule 50(a). *See e.g. Martin v. Milwaukee*, 904 F.3d 544, 549-50 (7th Cir. 2018). Because Watson did not move under Rule 50(a) before the case was submitted to the jury, *see* Dkt. Nos. 100 & 101,

she cannot invoke Rule 50(b) now. Her request for judgment notwithstanding the verdict must therefore be denied.

### B. Watson Is Not Entitled to Relief from Judgment.

Watson also invokes both Rule 59(e) and Rule 60(b) in seeking relief from judgment. Dkt. No. 124 at 1. "Rule 59(e) allows a court to alter or amend a judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence." *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008) (citing *Sigsworth v. City of Aurora*, 487 F.3d 506, 511-12 (7th Cir. 2007)). Rule 60(b) allows a court to vacate a judgment for several reasons including mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud, misrepresentation, or misconduct. *See* Fed. R. Civ. P. 60(b)(1)-(3). "Once judgment has been entered, there is a presumption that the case is finished, and the burden is on the party who wants to upset that judgment to show the court that there is good reason to set it aside." *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009).

### 1. Watson Has Not Established a Basis for Relief under Rule 59(e).

Watson makes no effort to explain how Rule 59(e) applies to her request for relief. *See* Dkt. No. 124. In fact, other than citing to the rule in the introduction of her motion, *id.* at 1, Watson does not mention it again, *see id.* at 2-10. Nor does she cite any cases applying the rule. *See id.* And because she failed to file a reply brief, the only place to look for support for her argument is in her initial motion. She has thus left the Court only to guess how she thinks Rule 59(e) applies to her request for relief.

It should go without saying that it is her responsibility to develop her arguments. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (waiver applies "where a party fails to develop arguments related to a discrete issue."); *see also MBM Holdings LLC v. City of Glendale*,

3

843 Fed. App'x 5, 8 (7th Cir. 2021) ("It is the responsibility of the litigants to raise coherent legal claims, produce factual support, and develop reasoned arguments supported by citation to legal authority.") She has abdicated that responsibility. Accordingly, her request for relief under Rule 59(e) will be denied. *See Krebs v. Graveley*, 861 F. App'x 671, 673 (7th Cir. 2021) (quoting *Krebs v. Graveley*, No. 19-CV-634-JPS, 2020 WL 1479189, at *2 (E.D. Wis. Mar. 26, 2020) ("We have repeatedly warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even when those arguments raise constitutional issues).").

### 2. Watson Has Not Shown She Is Entitled to Relief under Rule 60(b).

With respect to Rule 60(b), Watson does little better. She quotes the rule's text, bolding the language in subsections (1) "mistake, inadvertence, surprise, or excusable neglect;" and (3) "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Dkt. 124 at 4. Then, without tying her argument to either subsection, Watson contends she is entitled to relief from the jury's verdict based on her "recent[] discover[y]" that Carter was incarcerated at the Ozaukee County Jail at the time he filed the original complaint in May 2018. *Id*. at 2-4. This new discovery, she argues, means Carter and his initial complaint should have been subject to the Prison Litigation Reform Act (PLRA) and its exhaustion requirement. *Id*. Although Watson did not raise this issue before the trial, she insists that Carter's failure to exhaust warrants relief from the judgment and dismissal of his claims. *Id.*

Carter does not dispute that he was incarcerated in the Ozaukee County Jail when he filed his initial complaint but contends relief from judgment and dismissal are inappropriate. Dkt. No. 126 at 13-20. He points out that he was no longer in custody when he filed his amended complaint, which was the operative pleading at the time of trial, and argues that this makes the PLRA and its

4

exhaustion requirements inapplicable. *Id*. He also contends that Watson has waived any affirmative defense based on exhaustion because his incarceration status at the time of the original complaint could have been determined long ago and well before the Court entered judgment. *Id*. He further argues that Watson's delay in raising the issue is the result of her own failure to engage in basic due diligence and should not result in overturning a jury verdict. *Id*.

The law governing exhaustion under the PLRA is somewhat technical. Congress enacted the PLRA "[i]n an effort to address the large number of prisoner complaints filed in federal court." *Jones v. Bock*, 549 U.S. 199, 202 (2007). The statute provides, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. "This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Id*. A dismissal for failure to exhaust is without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

But the PLRA and its exhaustion requirement do not apply to a prisoner who brings suit after he is released from custody and is thus "no longer confined in a jail, prison, or other correctional facility." *Kerr v. Puckett,* 138 F.3d 321, 322 (7th Cir. 1998). The law distinguishes between current and former prisoners because "Congress deemed prisoners to be pestiferous litigants because they have so much free time on their hands and there are few costs to filing suit." *Id.* at 323. After release, "[o]pportunity costs of litigation rise . . . diminishing the need for special precautions against weak suits." *Id.*

5

Carter argues that, because the jury considered only claims raised in his amended complaint—filed *after* his release from prison—his lawsuit was not of the pestiferous variety that Congress sought to subject to the PLRA's exhaustion requirements. But the Seventh Circuit has held that the dispositive question is whether the litigant was incarcerated "when he *initiated*" the lawsuit. *Stites v. Mahoney*, 594 F. App'x 303, 304 (7th Cir. 2015) (citations omitted). And while Carter suggests that his case is the functional equivalent of *Barnes v. Briley*, 420 F.3d 673 (7th Cir. 2005), he overlooks the fact that the prisoner in that case properly exhausted his administrative remedies *before* seeking leave to amend. *Id.* at 678. By contrast, both Carter's original and amended complaints contained the same claims, none of which were ever exhausted. *See* Dkt. Nos. 1, 4, & 22. The Court must, therefore, conclude that the PLRA applies to Carter, and that his failure to exhaust the claims raised in his amended complaint rendered irrelevant his incarceration status at the time the amendment was filed.

But even though the PLRA applies, Watson's post-trial invocation of the PLRA's exhaustion requirement does not necessarily warrant relief from judgment. Exhaustion is an affirmative defense. *Pavey v. Conley*, 544 F.3d 739, 740–41 (7th Cir. 2008). Accordingly, it was Watson's burden to investigate the issue and raise it through summary judgment, yet she failed to do so. Recognizing this failure, Watson seeks to sidestep her tardiness by suggesting she was unable to raise the exhaustion issue timely. Although she does not expressly tie her arguments to the provisions of Rule 60(b), it appears she is claiming her failure was due to mistake, inadvertence, surprise, or excusable neglect under Rule 60(b)(1) or because Carter committed fraud, made a misrepresentation, or engaged in misconduct under Rule 60(b)(3).

Rule 60(b)(1) provides for relief from a final judgment that is the product of mistake, inadvertence, surprise, or excusable neglect. Fed. R. Civ. P 60(b)(1). This provision applies to

6

errors by judicial officers as well as parties. *Pearson v. Target Corp.,* 893 F.3d 980, 984 (7th Cir. 2018). But neither "ignorance" nor "carelessness" on the part of a litigant or her attorney are grounds for relief under Rule 60(b)(1). *Deloney v. McCann*, 229 F. App'x 419, 422 (7th Cir. 2007).

Watson's motion implies that her failure to discover that Carter was incarcerated at the time he initiated this lawsuit was mistake, inadvertence, surprise, or excusable neglect. She asserts that she "recently" made this discovery. But she leaves much unanswered and unexplained. For example, she does not say when or how she made this discovery, explain whether she attempted to investigate this issue before judgment was entered but was stymied for some reason, or provide any other information as to the circumstances of the discovery. With only a vague assertion about what happened, the Court cannot conclude that Rule 60(b)(1) applies to the case. *See e.g. Longs v. City of S. Bend*, 201 F. App'x 361, 365 (7th Cir. 2006) (noting that Plaintiff "has offered no explanation for his attorney's neglect, so there is no reason to consider it excusable."); *see also Am. C.L. Union of Illinois v. City of Chicago*, No. 75 C 3295, 2010 WL 3273279, at *2 (N.D. Ill. Aug. 13, 2010) (noting that Plaintiff was not entitled to relief because he "contends only that the court should reopen the judgment because of 'mistake or inadvertence,' tracking the language of Rule 60(b)(1).... [with] no explanation of how the circumstances of his case justify relief under Rule 60(b) (1), and cites no case on point."). In the absence of any explication, Watson's motion equally suggests that the recency of her "discovery" may have been due to her own attorney's ignorance or carelessness. Having failed to support her conclusory assertions, it is not this Court's job to adopt one form of speculation (in her favor) over another. Her generic assertions do not suffice to support her effort to overturn the jury's verdict under Rule 60(b)(1).

Though she (curiously) did not bold the language in Rule 60(b)(2), Watson's alleged recent discovery could also be analyzed under this subsection, which allows the Court to grant relief from

judgment based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(e)." Evidence is deemed to be "newly discovered" when *all* of the following are met: (1) the evidence was discovered after the Court's judgment; (2) due diligence to discover the evidence before the Court's judgment is shown or may be inferred; (3) the evidence is not merely cumulative; (4) the evidence is material; and (5) the evidence would probably produce a different outcome. *Matter of Chi., Milwaukee, St. Paul & Pac. R.R. Co.,* 78 F.3d 285, 293–94 (7th Cir. 1996). Even if she had invoked this section, her motion would fail. As noted above, Watson has offered nothing indicative of pre-judgment due diligence. Indeed, it was no secret that Carter had multiple prior run-ins with the law. A basic inquiry would have suggested that Watson determine whether he was still having run-ins with the law and whether he was incarcerated at the time he initiated the lawsuit. Moreover, the vagueness of Watson's motion precludes any reasonable inference that the "recently discovered" evidence was actually discovered *after* the Court's judgment, as Rule 60(b)(2) expressly requires. The cryptic description Watson offers suggests it is equally likely that she was aware of the fact before judgment was entered and yet waited until after the jury's verdict to seek relief. Regardless, Watson has failed to establish that she is entitled to relief under Rule 60(b)(2).

Rule 60(b)(3) provides that the Court may set aside a judgment if an opposing party engaged in fraud, misrepresentation, or misconduct. *Wickens v. Shell Oil Co.*, 620 F.3d 747, 758–59 (7th Cir. 2010). To obtain relief under Rule 60(b)(3), a party must show that she has a meritorious claim that she was prevented from "fully and fairly presenting" at trial as a result of the adverse party's fraud, misrepresentation, or misconduct. *Id*. (quoting *Ty Inc. v. Softbelly's Inc.,* 353 F.3d 528, 536 (7th Cir. 2003). Fraud, misrepresentation, or misconduct is actionable only if

8

it prejudices the adverse party. *Id.*; *see also Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995). And the party seeking relief must establish all of this by "clear and convincing" evidence. *Id.*

Watson asserts that Carter listed his residential address, rather than his jail address, on the docket. She also notes that he was asked about all of his "previous residences" through a discovery request, and responded, "I do not recall every address I have lived at over the past 8 years." But neither constitutes "clear and convincing" evidence of fraud, misrepresentation, or misconduct. Indeed, Carter has given a reasonable explanation for why he listed his residential address on the docket. He states that he was in and out of custody during the relevant time period on minor misdemeanors, so he listed his current residential address on the docket as that was his home-base where he received all of his mail, such as utility bills, bank statements, and other documents. Given the circumstances of his intermittent incarcerations, it is also reasonable that he did not remember every residence he lived at over the past 8 years. Moreover, as Carter points out, if Watson had wanted information about his incarceration status, she could have simply asked through an interrogatory whether he was incarcerated at the time he initiated the lawsuit. It was not Carter's responsibility to make it as easy as possible for Watson to investigate the facts of the case and determine what affirmative defenses may apply. *See e.g., Apotex Corp. v. Merck & Co.,* No. 04 C 7312, 2006 WL 1155954, at *6 (N.D. Ill. Apr. 25, 2006) (noting that "[m]ere non-disclosure [of information that was never requested through discovery] by a party or a party's attorney in a civil case does not amount to a fraud upon the court."). Further, even if there was "clear and convincing" evidence of fraud, misrepresentation, or misconduct, Watson would not have been prejudiced by it because Carter could have simply dismissed the case and refiled to avoid the exhaustion requirement. *See e.g. Cox v. Mayer*, 332 F.3d 422, 426-27 (6th Cir. 2003). Watson therefore has not established that she is entitled to relief under Rule 60(b)(3).

Finally, the Court notes that it has discretion to grant relief from judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The Seventh Circuit has described the decision under Rule 60(b) as "discretion piled on discretion." *Tolliver v. Northrop Corp.*, 786 F.2d 316, 319 (7th Cir. 1986). Watson must establish that there is a "substantial danger" that the order at issue "was fundamentally unjust." *Dickerson v. Bd. of Educ. of Ford Heights, Ill.*, 32 F.3d 1114, 1117 (7th Cir. 1994) (citing *Daniels v. Brennan*, 887 F.2d 783, 790 (7th Cir. 1989)). As noted above, even if the issue of exhaustion was timely raised, Carter could have dismissed this lawsuit and refiled to avoid the exhaustion requirement. Had he done so, the parties would be in the same situation they find themselves in now. As the Seventh Circuit has explained, "[r]elief under Rule 60(b) is warranted 'only upon a showing of extraordinary circumstances that create a substantial danger that the underlying judgment was unjust.'" *Daniels*, 887 F.2d at 790 (quoting *3 Penny Theater Corp. v. Plitt Theatres, Inc.*, 812 F.2d 337, 340 (7th Cir. 1987)). Given that the parties (and the Court) have already expended substantial resources to go through a jury trial, this case does not present the exceptional circumstances in which justice would require relief from judgment. Therefore, the Court will deny the motion for relief from judgment.

### C. Watson Is Not Entitled to Remittitur.

Watson also invokes the concept of remittitur and asks the Court to throw out or reduce the $125,000 punitive damages award. Dkt. No. 124. She argues that the award should be eliminated completely because the jury verdict was "illogical" given that it awarded punitive damages after awarding no compensatory damages. *Id*. at 5-6. She also insists the jury must have been "confused" about the law and improperly based its punitive damages award on a mere finding that she violated prison procedures. *Id*. Alternatively, she states that the award should be reduced because it "exceeds constitutional limits" and is beyond her ability to pay. *Id.* at 6-9.

10

The Seventh Circuit has recognized the power of a district court to grant remittitur where a jury's damages award is excessive. *See Adams v. City of Chicago*, 798 F.3d 539, 541-43 (7th Cir. 2015). "A true remittitur order gives the winning party a choice: he may either accept a specific reduced monetary award or he may opt for a new trial." *Id.* at 541. A plaintiff who accepts a reduced award then gives up the right to appeal. *Id.* If the plaintiff instead chooses a new trial, the appeal must await the conclusion of the second trial. *Id.* The Seventh Circuit has emphasized that this choice must be allowed the prevailing plaintiff, and the district court "may not of itself arbitrarily reduce the damages." *Bucher v. Krause*, 200 F.2d 576, 588 (7th Cir. 1952). Failure to offer the choice between a new trial and remittitur is reversable error because "[t]he Seventh Amendment reserves the determination of damages, in jury trials within its scope, to the jury." *Adams*, 798 F.3d at 542 (quoting *McKinnon v. City of Berwyn,* 750 F.2d 1383 (7th Cir. 1984)). Watson fails to address any of this procedure.

Watson's argument that the jury's failure to award compensatory damages renders the punitive damages award "illogical" ignores well-established Seventh Circuit law. The Court of Appeals has recognized that a plaintiff in a §1983 action can recover punitive damages without any compensatory damages. *See Erwin v. County of Manitowoc*, 872 F.2d 1292, 1299 (7th Cir. 1989). The jury was properly instructed on the standard for awarding punitive damages, *see* Dkt. No. 103 at 9, and, as will be discussed in the section below, there was ample evidence presented at trial that would warrant such an award. Moreover, Watson's speculation that the jury must have been "confused" about the law is also baseless. The Court specifically instructed the jury not to find liability based on a mere violation of prison rules, *see* Dkt. No. 103 at 7, and counsel for both defendants explicitly explained during their closing arguments that this case was not about a

11

violation of prison rules. There is no basis to suggest the jury did not follow the law as it was specifically instructed.

The evidence presented at trial also supported the jury's punitive damage award. To determine whether punitive damages exceed constitutional limits, the Court must consider: (1) the reprehensibility of the action in question; (2) the ratio between the compensatory and punitive damages; and (3) the difference between the damages award and the civil penalties authorized or imposed in comparable cases. *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996); *see also Green v. Howser*, 942 F.3d 772, 782 (7th Cir. 2019) (*citing State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003)).

With respect to the first factor, the Supreme Court has identified criteria for courts to consider in assessing the degree of reprehensibility of a defendant's conduct: (a) whether the harm caused was physical as opposed to economic; (b) whether the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (c) whether the target of the conduct was vulnerable; (d) whether the conduct involved repeated actions or was an isolated incident; and (e) whether the harm was the result of intentional malice, trickery, or deceit, or mere accident. *State Farm,* 538 U.S. at 419. "Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Id.* With respect to the second factor, the Supreme Court has stated that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id*. at 425. But a higher ratio could be warranted in the right circumstance, for example if compensatory damages are small or the conduct is "particularly egregious." *Id.* Finally, with respect to the third factor, the Seventh Circuit has noted, "even if the punitive award is higher than those in comparable cases, this guidepost generally

12

deserves less weight than the other two." *Rainey v. Taylor*, 941 F.3d 243, 255 (7th Cir. 2019). This is true because comparing cases is an imprecise endeavor at best. Many of the factors that inform a punitive damages award, such as a defendant's attitude, tone, or demeanor on the stand, do not translate well to paper.

Carter provided ample evidence at trial to support an award of punitive damages. He testified that Watson physically touched him sexually and made him do the same to her in a variety of ways. The jury, therefore, could reasonably conclude that the harm he suffered was "physical." He also forcefully explained that, as an inmate, he was at the mercy of Watson, a correctional officer, who constantly threatened to take away privileges, visits, and phone calls, if he did not comply with her prurient orders. There was ample testimony for the jury to reasonably conclude that Watson took advantage of him as a "vulnerable" inmate. Carter testified that Watson forced him to engage in unwanted sexual acts multiple times—four or five times in total over a short two-to-three-month period. Thus, Watson's misconduct was not an "isolated" incident. And he testified that Watson started grooming him for the unwanted sexual relationship from the moment he entered the institution. She began by giving him extra food, supplies, gym time, recreation time, and haircuts to make him feel special and build trust; she then escalated to complimenting his appearance and describing her sexual preferences; and she ultimately ended by requesting sexual acts and demanding that he not say anything about it. Carter testified that, following the first unwanted sexual encounter where she forced a kiss on him, she threatened to accuse him of rape if she ultimately got caught. He also explained that Watson constantly mentioned his pending release date, implying that she would interfere with his upcoming release if he did not continue complying with her orders. The jury could therefore reasonably conclude that Watson's conduct

13

was "malicious" and "deceitful." The jury then found that Watson showed deliberate indifference to Carter's health and safety and awarded punitive damages.

Watson argues that the jury's decision not to award any compensatory damages suggests it must have concluded that Carter "consented" to the relationship. But this assertion is supported by nothing more than Watson's speculation. Indeed, during closing arguments, defense counsel for Weidemann specifically explained to the jury that, although Watson maintained that she never engaged in any sexual act with Carter while he was in prison, if the jury believed that sexual acts did occur while he was incarcerated, the jury could consider whether he consented to those sexual acts in determining liability for both Watson and Weidemann. The jury nevertheless found Watson liable. Rather than inferring consent, the jury instead could very easily have found compensatory damages difficult to ascertain while still deciding that punitive damages were appropriate given the evidence of Watson's conduct. Further, Watson entirely denied having a sexual relationship with Carter (despite having his name tattooed on her chest). The jury plainly rejected her self-serving testimony and would have been justified in concluding that she was refusing to accept the consequences of her misconduct and needed to be punished. In such circumstances, a reasonable jury could have concluded that punitive damages were required to deter similar conduct in the future. There is nothing irrational about such a finding.

Further, other cases support the reasonableness of the jury's award here. A jury in another recent case awarded $3,750,000 in punitive damages to each inmate that was sexually assaulted by a prison guard over a three-year period. *J.K.J. v. Polk Cnty.,* 928 F.3d 576, 603–04 (7th Cir. 2019). The Seventh Circuit reviewed the jury award and did not disturb it because the defendant's conduct was "particularly reprehensible" and "the more easily a defendant can conceal violations, the higher the punitive damages." *Id*. Similarly, a different jury awarded $5,000,000 in punitive

14

damages to an inmate who was sexually assaulted by a guard at the Milwaukee County Jail. *Martin,* 904 F.3d at 549. The jury's award in this case is a fraction of that from *J.K.J.* and *Martin*, and it is reasonable in light of the facts presented at trial.

Finally, Watson states that she lacks the ability to pay the punitive damages award. But she waived the argument by failing to object to the punitive damages jury instruction. *See Coulter v. Vitale*, 882 F.2d 1286, 1290 (1989) ("Once the law of the case has been settled by failure to object to jury instructions, parties may argue only whether the jurors have performed their proper function."). Indeed, Seventh Circuit Pattern Jury Instruction 7.28 specifically mentions "[d]efendant's financial condition" as a proposed factor in determining punitive damages, and Watson did not ask to include it in the jury instructions nor did she object to its exclusion. She therefore waived the argument, so the Court will deny the motion for remittitur.

## II.     Carter Is Entitled to a Portion of His Requested Attorneys' Fees.

Carter's motion for attorneys' fees seeks an award of **$261,059.39** under 42 U.S.C. §1988. Dkt. No. 107 at 11. He explains that he used the standard "loadstar" method to calculate legal fees of **$222,340.50**. *Id*. at 2-3. He also requests an additional **$33,351.08** due to the 15% increase allowed when receiving an "extraordinary" result and an additional **$5,367.81** in legal costs (including experts). *Id*. at 3-11.

Watson did not file a separate response to the motion but asserts in her motion for relief that Carter's requested attorneys' fees should be a maximum of **$110,042.38** under §1997e(d)(2)-(3) because the current hourly rate for defense counsel under the Criminal Justice Act is $155 per hour and 150% of that is **$232.50** per hour. Dkt. No. 124 at 5. She states that the hourly paralegal rate is **$145** per hour. *Id*. The Court notes that Carter's total award from the jury is $125,000. Dkt. No. 104.

15

The Court has already concluded that the PLRA applies to this case because Carter was a prisoner when he initiated this action. The PLRA "sets both absolute and relative limits on attorneys' fee shifting." *Johnson v. Daley*, 339 F.3d 582, 583 (7th Cir. 2003). "Subsections (1) and (2) establish relative limits: fees must be 'proportionately related to the court ordered relief' and, when monetary relief is awarded, the fees attributable to that relief cannot exceed 150% of the damages." *Id*. "Subsection (3) establishes an absolute limit at 150% of the hourly rate for defense counsel under the Criminal Justice Act, times the number of hours reasonably devoted to the litigation." *Id*. "The total amount that an attorney may *receive,* however, is greater, not only because the attorney is entitled to 25% of the judgment under subsection (2) but also because the client is free under subsection (4) to agree by contract to pay more-out of the recovery or out of other assets." *Id*. "[A]ttorneys' compensation comes *first* from the damages [under subsection (2)], as in ordinary tort litigation, and only if 25% of the award is inadequate to compensate counsel fully may defendant be ordered to pay more under §1988." *Id.* at 585.

Using the explanation in *Johnson*, the "relative cap" under subsection (2) is **$187,500** (150% of the judgment). The "absolute cap" in subsection (3) produces a lower award of **$110,042.38.**[1] Thus, under §1997e(d), Carter's counsel can receive a maximum of **$141,292.38** for legal services—$31,250 (from 25% the total award of $125,000) plus an additional $110,042.38 from Watson (under subsection (2)). Thus, Carter's motion for attorneys' fees is granted but the amount is reduced to **$141,292.38.**

### III. The State of Wisconsin's Motion to Intervene Is both Unripe and Untimely.

The State of Wisconsin seeks to intervene to obtain a declaratory judgment that Watson was not acting within the scope of her employment and thus the State is not liable for

---

[1] Consistent with the reasoning in *Johnson*, this figure (**$110,042.38**) comes from Watson's lawyer; Carter did not question its accuracy nor did this Court "plumb the details of its calculation."

16

indemnification under Wis. Stat. 895.46(1)(a). Dkt. No. 117. The State argues that, *if* Watson intends to assign her indemnification rights to Carter, *then* neither party in this case has an incentive to correct the amount of the final judgment even if it's legally unsound. *Id*. The State further explains that the indemnification issue did not become ripe for adjudication until after the jury found the defendant liable under the Eighth Amendment. *Id*.

To intervene as of right under Rule 24(a), the movant has the burden of establishing that: (1) the motion to intervene is timely; (2) it possesses an interest related to the subject matter of the action; (3) disposition of the action threatens to impair that interest; and (4) the parties fail to represent adequately their interests. *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 773 (7th Cir. 2007). With respect to timeliness, the Court considers the length of time the intervenor knew or should have known of its interest in the case, the prejudice caused to the original parties by the delay, the prejudice to the intervenor if the motion is denied, and any other unusual circumstances. *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 719 F.3d 785, 797-98 (7th Cir. 2013). The timeliness requirement is intended to "prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *United States v. City of Chicago,* 796 F.2d 205, 209 (7th Cir. 1986). "The test for timeliness is one of reasonableness: potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly." *Reich v. ABC/York–Estes Corp.,* 64 F.3d 316, 321 (7th Cir. 1995).

The Court will deny the motion to intervene for two reasons. First, neither Carter nor Watson has made a claim for indemnification or assigned indemnification rights. The State is simply asking for an advisory opinion on what would happen if either party did file such a claim. Accordingly, this motion is not ripe for adjudication. *See Wisconsin's Env't Decade, Inc. v. State*

17

Case 2:18-cv-00727-BHL   Filed 06/16/22   Page 17 of 20   Document 129

*Bar of Wisconsin*, 747 F.2d 407, 410 (7th Cir. 1984) (concluding that an abstract question calling for an "advisory opinion" is not a controversy ripe for adjudication).

Second, the motion to intervene is also woefully untimely. The State has known about this lawsuit since May 2018, when the "State of Wisconsin Department of Corrections" was itself served with the complaint as a named defendant in the case. At that time, the State chose not to participate as a party in the lawsuit and filed a motion to dismiss, which the Court granted. Now, after judgment has been entered and the case is closed, the State essentially asks the Court to take supplemental jurisdiction over a state-law indemnity claim under Wis. Stat. 895.46(1)(a). The Court will not do so. The State's decision to wait this long to intervene was unreasonable and it seeks to derail and unnecessarily complicate a lawsuit that has already reached the trail's end.

The State argues that the indemnity claim was not ripe for adjudication until after underlying liability was determined by a jury. But the State's failure to raise the scope of employment issue prior to trial means that the Court did not get the opportunity to gather the facts it needs from the jury to adjudicate the issue directly. *See e.g. Taylor v. City of Milford*, 10 F.4th 800, 813–14 (7th Cir. 2021) (noting that the district court can use a special verdict form to gather facts from the jury that will help the district court resolve post-trial matters.) Rather than timely raising the issue before trial and allowing the Court to draft a special verdict form that elicited the specific information needed to resolve the issue directly, the State seeks to limit the facts to only those that could be found *in hindsight* from a case that was presented to the jury in a different legal context that no one anticipated at the time would have other legal ramifications. That is not appropriate or efficient case administration. In other words, context matters, and if the State wanted this federal court to resolve a related state-law indemnity claim, it should have been brought to the Court's attention before trial so that the Court could directly address the issue with

a complete and accurate record created in the proper context. The State did not do this, even though it was aware of this lawsuit, so Carter and/or Watson are free to pursue this state-law indemnity claim in state court. The Court notes that Carter, who prevailed in this lawsuit, may be limited in what position he takes in state court by the doctrine of judicial estoppel, *see e.g. Janusz v. City of Chicago,* 832 F.3d 770, 776-77 (7th Cir. 2016) (explaining the concept of judicial estoppel), but that is a matter for the state court to resolve. And the State's argument that it will be prejudiced if the motion to intervene is denied because neither party has an incentive to "correct" the judgment is unpersuasive because this Court has already reviewed the judgment and concluded that it was legally sound and supported by the evidence presented at trial.

In *Martin*, for example, the district court ruled on the issue of indemnity under Wis Stat. 895.46 after a jury found a guard at the Milwaukee County Jail liable under the Eighth Amendment for sexually assaulting an inmate on multiple occasions. 904 F.3d 544. In that case, the indemnity claim was raised in the original complaint and went to trial to find specific facts on the scope of employment. *Id*. at 549. The jury found that the sexual assault did occur in the scope of employment and the district court allowed that verdict to stand. *Id*. On appeal, the Seventh Circuit reversed and vacated the verdict on the indemnification claim. *Id*. at 557. It noted, "we do not hold sexual assault could never be within the scope [of employment]. We simply conclude that on these facts, even when viewed most favorably to [the plaintiff] and the verdict, no reasonable jury could find these sexual assaults were within the scope." *Id*.

In this case, there were no factual findings regarding the scope of employment because the indemnity claim did not go to trial. True, the jury in this case believed Carter's assertion that unwanted sexual encounters occurred while he was incarcerated, but, as noted above, the fact that a sexual assault occurred, alone, is not dispositive on the scope of employment issue. *See e.g.*

19

*Martin,* 904 F.3d at 557; *see also Lemons v. City of Milwaukee*, No. 13-C-0331, 2016 WL 3746571, at *25 (E.D. Wis. July 8, 2016). Because the State did not raise the scope of employment issue before trial, the Court did not get the opportunity to gather the facts it needs from the jury to adjudicate the issue directly. Therefore, the Court will deny the motion to intervene and will deny as moot the motion for declaratory judgment.

**IT IS THEREFORE ORDERED** that Watson's "motion for judgment NOV, relief from judgment or for remittitur" (Dkt. No. 124) is **DENIED**.

**IT IS FURTHER ORDERED** that Carter's motion for attorneys' fees (Dkt. No. 107) is **GRANTED in part.** The motion is granted but limited to **$141,292.38** pursuant to 42 U.S.C. 1997e(d)(2)-(3).

**IT IS FURTHER ORDERED** that the State of Wisconsin's motion to intervene (Dkt No. 117) is **DENIED**.

**IT IS FURTHER ORDERED** that the State of Wisconsin's motion for declaratory judgment (Dkt No. 120) is **DENIED as moot**.

Dated at Milwaukee, Wisconsin on June 16, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge